ANTOINE KING, Plaintiff,

v.

EQUABLE ASCENT FINANCIAL, LLC, Defendant.

No. 1:12-CV-443.

United States District Court, M.D. North Carolina.

June 10, 2013.

# MEMORANDUM OPINION AND ORDER

CATHERINE C. EAGLES, District Judge.

Plaintiff Antoine **King** alleges that defendant **Equable Ascent** Financial, LLC, violated the Fair Credit Reporting Act ("FCRA") by accessing his credit report with no permissible purpose. (Doc. 2 at ¶ 20.) This matter is before the Court on Defendant's Motion to Dismiss based on insufficient service of process, (Doc. 7), Defendant's Motion to Dismiss for failure to state a claim, (Doc. 12), and Plaintiff's Motion for Judgment on the Pleadings, (Doc. 17).

## 1. Service of Process

**Equable's** motion to dismiss for insufficient service of process was filed on June 5, 2012. **Equable** contends that the complaint should be dismissed because the complaint was served by regular U.S. mail and because no summons was included with the complaint. This argument fails for two reasons. First, the motion is not supported by any evidence. Counsel for **Equable** states in the brief supporting the motion that the complaint was mailed to **Equable** via U.S. mail and attaches a copy of an envelope addressed to **Equable** with Mr. **King's** return address; **Equable** contends that this is not an acceptable form of service. (*See* Docs. 8, 8-1.) However, **Equable** has not submitted an affidavit from anyone with personal knowledge stating that the submitted envelope was the envelope in which the complaint was received or stating that there was no summons with the complaint.

Statements in a brief are not evidence. *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984), *superseded on other grounds by statute as recognized in* *INS v. Hector*, 479 U.S. 85, 90 n.7 (1986). Ordinarily there must be some evidence supporting a defense motion to dismiss for insufficient service of process, if such invalid service is not apparent from the court record. *Wilson v. Jordan Auto's*, No: 1:08-CV-3778-JFK, 2009 WL 700391, at *3 (N.D. Ga. Mar. 16, 2009) (noting that courts examine evidence supporting a motion to dismiss for insufficient service of process); *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 312 (S.D.N.Y. 2008) (denying motion to dismiss where defendant failed to submit "any supporting affidavit that attests to the alleged deficiencies in plaintiffs' service of process"); *Griffin-Nolan v. Providence Wash. Ins. Co.*, No. 504CV1453FJSGJD, 2005 WL 1460424, at *3 (N.D.N.Y. June 20, 2005) ("[C]ommon sense dictate[s] that a motion to dismiss for failure to serve summonses requires a supporting affidavit. . . ."); *Dixie Rests., Inc. v. Phillips Consumer Elecs. Co.*, Nos. 02-2461 D/A, 03-2506 D/A, 2005 WL 948802, at *2 (W.D. Tenn. Feb. 18, 2005) (denying a motion to dismiss where defendant "did not offer any evidence or information to explain its purported belief that service never occurred"); *accord* *Crabtree v. City of Durham*, 136 N.C. App. 816, 818, 526 S.E.2d 503, 505 (2000).

**Equable** contends that it could not have received a summons because a summons was not issued until several days after the postmark on the envelope in which it received the summons. If there were evidence that the envelope in the record was in fact the envelope in which the complaint was mailed, this argument would have merit. In the absence of

such evidence, however, it does not.

In any event, after the motion based on insufficient service was filed, a return of service was filed by the U.S. Marshal's Office on July 3, showing service on a person identified as "Jeff Hasenmiller/Attorney." (Doc. 11.) Thereafter, **Equable** filed a motion to dismiss for failure to state a claim. It did not reassert its claim of insufficiency of service of process, and has submitted no evidence that this service by the Marshal was insufficient.

The Court deems the motion to dismiss for insufficient service of process to be abandoned and, in the alternative, finds it should be denied for lack of evidence.

## 2. Failure to State a Claim

The purpose of FCRA is to ensure that

> consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

15 U.S.C. § 1681(b). "The FCRA allows access to a consumer's credit report only under specific circumstances where a permissible purpose exists." Cappetta v. GC Servs. Ltd. P'ship, 654 F. Supp. 2d 453, 457 (E.D. Va. 2009) (citing 15 U.S.C. § 1681b(a) ("[A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other. . . .")). "Permissible purposes" are defined by statute and include approximately ten listed permissible purposes. 15 U.S.C. § 1681b(a). Persons who willfully fail to comply are liable to the consumer for statutory damages of at least $100 for each violation and actual damages, if they are larger. 15 U.S.C. § 1681n. Persons who act negligently are liable to the consumer for "any actual damages sustained by the consumer." 15 U.S.C. § 1681o(a).

In summary, to state a claim for willful or negligent acquisition of a credit report under the FCRA,

> a plaintiff must allege facts showing each of the following: (i) there was a consumer report; (ii) the defendants used or obtained it, (iii) the defendants did so without a permissible statutory purpose, and (iv) the defendants acted with the specified culpable mental state.

Benzing v. Tharrington-Smith, LLP, 5:10-CV-533-F, 2012 WL 169946, at *3 (E.D.N.C. Jan. 19, 2012) (citing Shepherd-Salgado v. Tyndall Fed. Credit Union, No. 11-0427-WS-B, 2011 WL 5401993, at *3 (S.D. Ala. Nov. 7, 2011); Cappetta, 654 F. Supp. 2d at 461). A plaintiff also must allege facts that plausibly suggest that he is entitled to damages. Novak v. Experian Info. Solutions, Inc., 782 F. Supp. 2d 617, 623-24 (N.D. Ill. 2011).

In his complaint, Mr. **King** alleges that he obtained his consumer credit reports from the three major credit reporting agencies and found entries by entities with which he was unfamiliar, including one indicating that **Equable** "had obtained Plaintiffs [sic] TransUnion consumer credit report in February 2009." (Doc. 2 at ¶¶ 7-9.) He further alleges that he "has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from" **Equable**. (Id. at ¶ 18.) He further alleges that he did not give his consent for **Equable** to acquire the report, (id. at ¶ 19), and that **Equable** obtained the credit report with no permissible purpose in violation of the FCRA. (Id. at ¶ 20.)

**Equable** contends that these allegations are insufficient because they do not contain any specific allegations negating the possibility that **Equable** had a permissible purpose for obtaining the credit report. On the one hand, it is difficult to understand how a consumer is supposed to know why another person or entity obtained the consumer's credit report. Certainly there will be cases where the consumer has had some contact with the person or entity obtaining the report

and will be able to draw inferences or make allegations on the basis of those contacts. *See, e.g., Benzing,* 2012 WL 169946, at *3 (noting that allegations in complaint gave rise to the inference that defendant purported to obtain the report for employment purposes but real purpose was related to litigation); *Cappetta,* 654 F. Supp. 2d at 462-63 (concluding that allegations sufficiently indicated that defendant should have known that a particular account did not belong to plaintiff and therefore there was no permissible purpose for obtaining plaintiff's credit report); *Smith v. Bob Smith Chevrolet, Inc.,* 275 F. Supp. 2d 808, 817 (W.D. Ky. 2003) (inferring from business dealings between plaintiff and defendant that defendant obtained plaintiff's credit report for its own business purposes, not in connection with a standard business transaction initiated by plaintiff). But when the person or entity obtaining the report is a complete stranger to the consumer, it seems to be asking a bit much for the consumer to read the mind of this complete stranger, or phrased more prosaically, to know the purpose for which the person or entity asked for the consumer's credit report.

On the other hand, nothing prevented Mr. **King** from contacting **Equable** before filing suit to inquire about the reason **Equable** obtained the report. *See* Fed. R. Civ. P. 11(b) (requiring litigants to make "an inquiry reasonable under the circumstances" before making factual contentions). If **Equable** provided an unsatisfactory answer or refused to respond, those facts would then be available to Mr. **King** to include in the complaint as a basis for drawing the inference that there was no permissible purpose. Given the number of permissible reasons a person can obtain a credit report, such an inquiry would be one way a plaintiff in a "stranger" FCRA case could ensure a factual basis for the allegation that there is no permissible purpose.[1]

Mr. **King** does allege some facts which specifically disclaim some of the permissible purposes in the statute, but there are several other common permissible purposes as to which the complaint is silent. *See, e.g., Huertas v. Galaxy Asset Mgmt.,* 641 F.3d 28, 34 (3d Cir. 2011) (holding that the FCRA authorizes use of credit reports in connection with collection of a delinquent account). Mr. **King** has alleged no other facts which would give rise to the inference that none of these other permissible purposes were the reason for **Equable's** request. He does not, for example, allege that he had no delinquent accounts. His conclusory statement that **Equable** did not have a permissible purpose is insufficient to state a claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In addition, Mr. **King** has not alleged any facts to support a claim of intentional violation. *See Singleton v. Domino's Pizza, LLC,* No. DKC 11-1823, 2012 WL 245965, at *4 (D. Md. Jan. 25, 2012) (holding that "a mere assertion of willful noncompliance with the FCRA will not, on its own, satisfy Rule 8(a)"). Nor has he alleged any facts to support his claim for actual damages. *See Novak,* 782 F. Supp. 2d at 623-24. He did not allege, for example, that the unauthorized request for a credit report affected his ability to get a specific loan or line of credit or interfered with his ability to rent a specific home or get a specific job.

Because the complaint fails to state a claim on which relief may be granted, the defendant's motion should be granted.

## 3. Motion for Judgment on the Pleadings

Mr. **King** has moved for judgment on the pleadings. Because the complaint fails to state a claim on which relief may be granted, Mr. **King** is not entitled to judgment.

It is ORDERED that Defendant's Motion to Dismiss based on insufficient service of process, (Doc. 7), is DENIED, Defendant's Motion to Dismiss for failure to state a claim, (Doc. 12), is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings, (Doc. 17), is DENIED. Plaintiff's complaint is DISMISSED.

[1] The Court does not mean to impose a hard-and-fast pre-suit requirement of an inquiry to the person or entity who obtained the report. There may be circumstances where such an inquiry is impossible or would not be helpful, or there may be other evidence supporting specific allegations which would support the inference that there was no permissible purpose, or there may be other ways a plaintiff could investigate the issue pre-trial.